[No. S018109. Jan. 30, 1992.]

In re WILLIE SAMUEL JOHNSON on Habeas Corpus.

## COUNSEL

Carlo Andreani, under appointment by the Supreme Court, for Petitioner.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Richard B. Cullather, Mark Alan Hart and Frederick C. Grab, Deputy Attorneys General, for Respondent.

## OPINION

**BAXTER, J.**—We are asked to decide whether a criminal defendant's constitutional right to representation by counsel is denied as a matter of law if, prior to trial and without defendant's knowledge, his attorney has been suspended from the practice of law and has submitted his resignation to the State Bar while disciplinary charges are pending.

We conclude that representation by an attorney who has submitted a resignation with disciplinary proceedings pending, and has as a result been

placed on inactive status, denies a criminal defendant the counsel guaranteed by article I, section 15 of the California Constitution.[1] We shall, therefore, reverse the judgment of the Court of Appeal.

## I

In July 1989, petitioner was convicted of selling cocaine in violation of Health and Safety Code section 11352. He had retained Raymond Hane to defend him in March 1989. At that time, unknown to petitioner, Hane had been suspended from the practice of law following a conviction for violation of Penal Code section 288, subdivision (a). On May 10, 1989, while State Bar disciplinary proceedings related to the conviction were pending, Hane submitted his resignation to the State Bar. Thereafter Hane appeared as counsel for petitioner at a May 23, 1989, pretrial conference; at the June 27, 1989, court trial; and at the July 12, 1989, sentencing hearing. This court accepted Hane's resignation from the State Bar on September 7, 1989.

Petitioner filed this petition for habeas corpus in conjunction with his appeal. Petitioner sought relief on the ground that, as a matter of law, he had been denied his state and federal rights to competent counsel and due process. He subsequently filed a "Traverse and Reply Brief" in which he also argued that Hane's failure to advise him of the criminal charges, conviction, and suspension denied petitioner his right to counsel of choice.

The Court of Appeal affirmed the judgment of conviction and in its opinion denied the petition without issuing an order to show cause.

We granted review only of the order denying the petition for habeas corpus. An order to show cause was issued. In his return respondent Director of Corrections did not dispute petitioner's allegations regarding Hane's status. Petitioner incorporated the allegations of the petition and "traverse" filed in the Court of Appeal into the traverse filed in this court. That traverse is accompanied by petitioner's declaration that during the pendency of the superior court proceedings he was not aware of counsel's suspension or resignation.

---

[1]Further references to constitutional provisions are to the California Constitution.

Article I, section 15: "The defendant in a criminal cause has the right to a speedy public trial, to compel attendance of witnesses in the defendant's behalf, to have the assistance of counsel for the defendant's defense, to be personally present with counsel, and to be confronted with the witnesses against the defendant. The Legislature may provide for the deposition of a witness in the presence of the defendant and the defendant's counsel.

"Persons may not twice be put in jeopardy for the same offense, be compelled in a criminal cause to be a witness against themselves, or be deprived of life, liberty, or property without due process of law."

■ Because there are no factual disputes whose resolution is necessary to disposition of the petition, an evidentiary hearing is unnecessary. (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257].)

## II

The Court of Appeal majority held that representation by an attorney who has been suspended for reasons unrelated to the attorney's practice of law is not per se a violation of the right to counsel, and does not relieve a defendant seeking reversal on grounds of ineffective counsel from demonstrating that counsel's performance fell below the standard to be expected of competent criminal defense attorneys to the prejudice of the defendant.

The court distinguished *People* v. *Medler* (1986) 177 Cal.App.3d 927 [223 Cal.Rptr. 401], and *People* v. *Hinkley* (1987) 193 Cal.App.3d 383 [238 Cal.Rptr. 272], the only California cases to have considered the issue. In *Medler* the court held that representation by an attorney suspended for nonpayment of dues had not denied effective assistance of counsel. *Hinkley* reached a contrary conclusion where the attorney had not only been suspended, but had been involuntarily enrolled as an inactive member of the State Bar pursuant to Business and Professions Code section 6007, subdivision (b)(2), after a finding had been made that the attorney was incapable of providing the quality of service necessary to protect his clients' interests, and that probable cause existed to believe that the attorney had willfully and intentionally abandoned his practice and failed to protect the interests of his clients.

In this case the Court of Appeal reasoned that in assessing a claim of ineffective counsel the proper test is whether the circumstances of the representation adversely affected the adversarial process. Therefore a defendant must establish a prejudicial impact on the adversarial process by demonstrating state interference with the right to counsel, a conflict of interest, or performance that is so inadequate as to deny the benefit of a full adversarial test of his guilt. (*Strickland* v. *Washington* (1984) 466 U.S. 688 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *United States* v. *Cronic* (1984) 466 U.S. 648 [80 L.Ed.2d 657, 104 S.Ct. 2039].) The court concluded that a suspension like that imposed on Hane on the basis of the commission of a crime of moral turpitude unrelated to the practice of law must be distinguished from suspension imposed on the basis of incompetence, and does not necessarily create a conflict or reflect an impairment of the attorney's legal ability. In the view of the Court of Appeal, a per se rule of reversability was not justified in these circumstances.

The dissenting justice concluded that reversal was required because the constitutional guaranty contemplates "a fully licensed lawyer."

## III

Petitioner argues strenuously that representation by an attorney who has committed a crime of moral turpitude, and who then commits further crimes of unlawfully practicing law while suspended, fraud, and contempt of court,[2] denies a criminal defendant due process of law. He also contends that such representation fails to afford the counsel guaranteed by article I, section 15, because a suspended attorney has no legal standing to fulfill that right, and, when the attorney has concealed this status from his or her client, denies the client the right to counsel of choice.

### A. *Suspension Pursuant to Business and Professions Code Section 6102.*

Hane was suspended from practice pursuant to the command of section 6102:

"(a) Upon the receipt of the certified copy of the record of conviction, if it appears therefrom that the crime of which the attorney was convicted involved or that there is probable cause to believe that it involved moral turpitude or is a felony under the laws of California or of the United States, the Supreme Court shall suspend the attorney until the time for appeal has elapsed, if no appeal has been taken, or until the judgment of conviction has been affirmed on appeal, or has otherwise become final, and until the further order of the court. Upon its own motion or upon good cause shown the court may decline to impose, or may set aside, the suspension when it appears to be in the interest of justice to do so, with due regard being given to maintaining the integrity of and confidence in the profession."[3]

We are not persuaded that a suspension under section 6102 alone creates a presumption of incompetence or deprives the defendant of his right

---

[2]The record does not reveal whether Hane has been charged or convicted of these additional offenses. It is undisputed, however, that he has practiced law while under suspension in this and other cases. An attorney who has been suspended from practice is not an active member of the State Bar while under suspension and is not entitled to practice while under suspension. (*In re Naney* (1990) 51 Cal.3d 186, 195 [270 Cal.Rptr. 848, 793 P.2d 54]; *Arm v. State Bar* (1990) 50 Cal.3d 763, 775 [268 Cal.Rptr. 741, 789 P.2d 922]; *In re Caldwell* (1975) 15 Cal.3d 762, 771 [125 Cal.Rptr. 889, 543 P.2d 257]; *Hill v. State Bar of California* (1939) 14 Cal.2d 732, 735 [97 P.2d 236].) Practicing law, or holding oneself out as practicing or entitled to practice law, while under suspension or transfer to inactive status by virtue of submission of one's resignation with charges pending, is both unlawful (Bus. & Prof. Code, § 6126) and a contempt (Bus. & Prof. Code, § 6127).

Unless otherwise indicated, all statutory references are to the Business and Professions Code.

[3]In addition to the suspension, Hane had been transferred to inactive enrollment status in the State Bar upon filing with the State Bar his resignation with charges pending. (Cal. Rules of Court, rule 960(a).)

Unless otherwise indicated, all references herein to rules are to the California Rules of Court.

to the "fully licensed attorney" contemplated by article I, section 15. Commission of any felony or other offense that may have involved moral turpitude triggers the suspension whether or not the crime was related to the attorney's practice or affected the quality of the attorney's representation of clients. ■ Yet, "admission of an attorney to the bar establishes that the State deems him competent to undertake the practice of law before all our courts, in all types of actions." (*Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559 [68 Cal.Rptr. 1, 440 P.2d 65].) ■ An attorney who is professionally competent does not become any less competent upon the filing of an order made pursuant to section 6102 suspending the attorney from practice. The date on which such an order is filed has no bearing on the attorney's knowledge or ability. Nor for that matter does the date on which the attorney may have committed an offense which, for purposes of State Bar discipline, is deemed to be a crime of or involving moral turpitude.

Petitioner's claim that he has been denied due process and the right to competent counsel is based on his reasoning that conviction of a crime of moral turpitude evinces a "willingness to do evil" which necessarily disqualifies or disables a person from the competent practice of law. As subdivision (a) of section 6102 indicates, however, the Legislature has not created a presumption of unfitness or incompetence in all cases in which an attorney is suspended following conviction. And, as we shall explain, a conclusion that an attorney is not a fit person to practice law is not a determination that the attorney lacks professional competence.

Discipline is imposed on the basis of an attorney's criminal conduct or violation of the Rules of Professional Conduct in order to protect the public from dishonest or corrupt attorneys as well as from those who fail to provide competent professional services. Suspension or disbarment may be deemed necessary to protect clients from dangers other than inadequate representation, and to maintain public confidence in the bar. Although, in some cases, misconduct occurs in the course of representation of a client, and adversely affects the quality of that representation, this is not invariably so.

A mandatory suspension pending finality of the judgment of conviction following commission of a crime of moral turpitude does not reflect a legislative or judicial assessment of the attorney's professional competence.[4] Recognition that commission of a crime of moral turpitude does not necessarily establish that an attorney is unfit to practice, let alone incompetent,

---

[4]When it appears that an attorney is not competent to practice law, involuntary enrollment as an inactive member of the State Bar, and/or a judicial assumption of jurisdiction over the attorney's practice may be ordered as an interim measure to protect the attorney's clients and the public. (See §§ 6007, 6180, 6190 et seq.; *Conway* v. *State Bar* (1989) 47 Cal.3d 1107 [255

appears in subdivisions (b) and (c) of section 6102. Those subdivisions call for additional proceedings to be undertaken upon finality of the judgment of conviction for the purpose of determining whether the attorney should be permitted to retain his or her license. Disbarment is mandatory if the offense includes as an element a "specific intent to deceive, defraud, steal, or make or suborn a false statement," or if the offense "was committed in, the course of the practice of law or in any manner such that a client of the attorney was a victim." (§ 6102, subd. (c).) If the matter is not governed by subdivision (c) of section 6102, and the court finds that the offense or the circumstances of its commission involved moral turpitude, disbarment or suspension is required "according to the gravity of the crime and the circumstances of the case." (§ 6102, subd. (d).)

■ Moreover, "moral turpitude" as used in section 6102 does not encompass all acts that might be understood by laypersons to violate societal precepts of morality, and does not, as petitioner contends, establish that the actor is of such character that he or she cannot, as a matter of law, be trusted to provide competent legal services. As used in the context of professional licensing, "moral turpitude" is a term of art which is given more precise meaning in its application to the particular profession. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 220 [82 Cal.Rptr. 175, 461 P.2d 375].) " 'The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection' (*Yakov* v. *Board of Medical Examiners* [(1968)] 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553]), and terms such as 'immoral,' 'unprofessional,' and 'moral turpitude' constitute only lingual abstractions until applied to a specific occupation and given content by reference to fitness for the performance of that vocation." (*Id.* at p. 239.)[5] As applied to licensing of attorneys, an act of moral turpitude is one which bears a direct relationship to the individual's fitness to practice law. It must reflect on the individual's honesty and veracity or demonstrate that the

Cal.Rptr. 390, 767 P.2d 657, 80 A.L.R.4th 101].) Under these provisions involuntary enrollment may be ordered if it appears that the attorney is mentally incompetent or poses a threat of substantial harm because he or she is not providing adequate legal services to clients, and the court may assume jurisdiction over the attorney's practice if he or she has been suspended, has become an inactive member, or has abandoned the practice due to illness or for other reasons.

[5]As this court recognized in *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 459-460 [55 Cal.Rptr. 228, 421 P.2d 76], these limitations on the power of the court to exclude individuals from the practice of law are constitutionally compelled. "A state cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. [Citations.] A State can require high standards of qualification, such as good moral character or proficiency in its law, . . . but any qualification must have a rational connection with the applicant's fitness or capacity to practice law." (*Schware* v. *Board of Bar Examiners* (1957) 353 U.S. 232, 238-239 [1 L.Ed.2d 796, 801-802, 77 S.Ct. 752, 64 A.L.R.2d 288].)

individual is unfit for the proper discharge of the individual's duties as an attorney. (*Id.* at p. 221; *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 471-472. See also *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815, fn. 3 [263 Cal.Rptr. 798, 781 P.2d 1344].)

For that reason a suspension pursuant to section 6102 is not a determination that an attorney is unfit to practice law. ■ "The first order of suspension is provisional and temporary, awaiting the affirmance or reversal of the judgment of conviction. [Citation.] It does not purport to satisfy the charge against a petitioner or to settle his fitness to remain a member of the bar." (*Shafer* v. *The State Bar* (1932) 215 Cal. 706, 708 [12 P.2d 957].) Excepting only those offenses which reflect moral turpitude on their face, "the commission of some crimes, standing alone, does not implicate an attorney's fitness to practice law" (*In re Strick* (1987) 43 Cal.3d 644, 653 [238 Cal.Rptr. 397, 738 P.2d 743]) and interim suspension may reflect nothing more than a determination that the attorney's acts suggest that "he or she *may* be unfit to practice law." (*In re Strick* (1983) 34 Cal.3d 891, 898 [196 Cal.Rptr. 509, 671 P.2d 1251]. Italics added.)

Therefore, the suspension of Hane pursuant to section 6102 in and of itself did not establish, as a matter of law, that he was unfit to practice law. ■ Moreover, a conclusion that an attorney who has committed an offense of moral turpitude is unfit to practice law is not necessarily a judgment on the attorney's professional competence. We do not presume that a suspended attorney lacks professional competence. "Merely because an attorney has been disciplined for some infraction of the rules by which he must abide is no reason for assuming that he is not a qualified and efficient lawyer. Erring morally or by breach of professional ethics does not necessarily indicate a lack of knowledge of the law." (*Friday* v. *State* Bar (1943) 23 Cal.2d 501, 508 [144 P.2d 564]. See also, *In re Stevens* (1925) 197 Cal. 408 [241 P. 88] [passing bar examination not prerequisite to reinstatement following disbarment on conviction of felony].)

Professional competence is only one element in determining whether an individual is "fit" to practice law. Professional competence demonstrated by education and examination *and* good moral character are required for admission to practice. (§ 6060.) Commission of acts manifesting moral turpitude may establish unfitness even if the attorney's professional competence is not disputed. (*Ibid.*; see also, *Kwasnik* v. *State Bar* (1990) 50 Cal.3d 1061, 1067-1068 [269 Cal.Rptr. 749, 791 P.2d 319].)

■ Some crimes are designated offenses involving moral turpitude for which interim suspension and disbarment or lesser discipline may be ordered, because they are so heinous that, absent a compelling showing of

mitigation and rehabilitation, public confidence in the legal profession and the judicial system would be undermined if persons who commit those offenses are permitted to practice. This is so even if the commission of the crime is unrelated to the offender's practice of law.[6] (See, e.g., *In re Larkin* (1989) 48 Cal.3d 236 [256 Cal.Rptr. 90, 768 P.2d 604] [conspiracy to commit assault with a deadly weapon; *In re Mostman* (1989) 47 Cal.3d 725 [254 Cal.Rptr. 286, 765 P.2d 448] [solicitation of murder]; *In re Kirschke* (1976) 16 Cal.3d 902, 904 [129 Cal.Rptr. 780, 549 P.2d 548] [first degree murder].)

Serious sexual offenses fall into this category of crimes involving moral turpitude. (See, e.g., *In re Duggan* (1976) 17 Cal.3d 416, 422 [130 Cal.Rptr. 715, 551 P.2d 19]; *In re Safran* (1976) 18 Cal.3d 134 [133 Cal.Rptr. 9, 554 P.2d 329].) We therefore reject petitioner's contention that the suspension of Hane pursuant to section 6102 establishes as a matter of law that Hane was incapable of providing, and did not provide, competent representation.[7]

B. *Right to Counsel Under Article I, Section 15.*

 The right to counsel guaranteed by article I, section 15, is the right to an attorney admitted to practice by this court. (See *People v. Perez* (1979) 24 Cal.3d 133; rule 983 [155 Cal.Rptr. 176, 594 P.2d 1, 3 A.L.R.4th 339].)
 Historically, admission was ordered following an oral examination of a candidate by the members of the court (Stats. 1851, ch. 4, §§ 1-4, p. 48) and expulsion was accomplished by the court without administrative hearing. (See *Cohen v. Wright* (1863) 22 Cal. 293; *People v. Turner* (1850) 1 Cal. 143.) Modernly, since adoption of the State Bar Act, the administrative aspects of attorney licensing and discipline are performed by the State Bar in the first instance (§ 6000 et seq; *Brydonjack v. State Bar* (1929) 208 Cal. 439 [281 P. 1018, 66 A.L.R. 1507]); article VI, section 9, mandates that persons who practice law in this state be members of the State Bar. ██ █

---

[6]Among the offenses which have been recognized as offenses involving moral turpitude because they call professional integrity into question regardless of whether they are committed in the course of an attorney's practice of law are: perjury (*In re Kristovich* (1976) 18 Cal.3d 468 [134 Cal.Rptr. 409, 556 P.2d 771]), or crimes involving dishonesty for personal gain (*In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]); falsifying documents to be used in evidence (*In re Dedman* (1976) 17 Cal.3d 229 [130 Cal.Rptr. 504, 550 P.2d 1040]); forgery (*In re Bogart* (1973) 9 Cal.3d 743 [108 Cal.Rptr. 815, 511 P.2d 1167]; and intent to defraud (*In re Hallinan* (1954) 43 Cal.2d 243 [272 P.2d 768]).

[7]We do not dispute petitioner's argument that the legislative prohibition of practice by a suspended attorney reflects a strong public policy which contemplates representation by an attorney who is presently authorized to practice. (See *People v. Medler, supra,* 177 Cal.App.3d 927, 934 (dis. opn. of White, P. J.).)

Therefore, representation by a member of the State Bar is now essential if the constitutional guaranty is to be satisfied.[8]

Representation by a person who has never been admitted to the practice of law or has fraudulently procured admission denies a defendant his rights under article I, section 15, as a matter of law. So too does representation by a person who, although formerly licensed, has resigned from the State Bar.[9] The court will not examine the quality of the representation in such cases since an essential element of the constitutional right to counsel is counsel's status as a member of the State Bar.

It is irrelevant that this court had not yet accepted Hane's resignation at the time he represented petitioner. A resignation with charges pending causes an immediate transfer of the attorney to inactive status. (Rule 960(a).) Hane submitted his resignation from the State Bar in the form prescribed by rule 960(b) relinquishing "all right to practice law in the State of California" and agreeing that:

"[U]pon the filing of this resignation by the Office of the Clerk, State Bar Court, that I will be transferred to inactive membership of the State Bar. Upon such transfer, I acknowledge that I will be ineligible to practice law or to advertise or hold myself out as practicing or as entitled to practice law."

This court must accept a rule 960 resignation unless "perpetuation of necessary testimony is not complete, . . . after transfer to inactive status, the member has practiced law or has advertised or held himself or herself out as entitled to practice law; . . . the member has failed to perform the acts specified by rule 955(a)-(b) of these rules; . . . the member has failed to provide proof of compliance as specified in rule 955(c) of these rules; . . . the Supreme Court has filed on order of disbarment as to the member or upon such other evidence as may show that acceptance of the resignation of the member will reasonably be inconsistent with the need to protect the public, the courts or the legal profession." (Rule 960(c).)

As these limited bases for declining to accept a rule 960 resignation demonstrate, the license to practice of an attorney transferred to inactive

---

[8]The two exceptions heretofore recognized in which the guaranty is satisfied, certified law students (*People* v. *Perez, supra*, 24 Cal.3d 133) and attorneys licensed in other states (rule 983), require, respectively, direct supervision by or association with an attorney licensed to practice in California.

[9]Judges must also have been members of the State Bar prior to selection. (Art. VI, § 15.) This court held in *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551], that trial of a criminal defendant before a nonattorney judge denied due process. Implicit in that decision was the assumption that the attorney was recognized as such because he or she was a member of the State Bar.

status pursuant to this rule has been irrevocably surrendered. If this court refuses or delays acceptance of the resignation it does so only because further proceedings related to the disciplinary charges must be carried out, additional charges lodged, or full compliance with the attorney's duties compelled. Unlike an attorney whose right to practice is suspended, there will be no further hearing to determine the attorney's competence or fitness to continue practice. The attorney is, for all purposes other than continued jurisdiction of the State Bar Court and this court, no longer a member of the State Bar. The attorney is not licensed to practice law in the State of California within the contemplation of article I, section 15.[10]

Therefore, while Hane's suspension alone does not establish incompetence as a matter of law, his representation of petitioner following the submission of his resignation from the State Bar with charges pending denied petitioner the representation guaranteed by article I, section 15.

Petitioner has met his burden of establishing denial of counsel under article I, section 15 of the California Constitution.

## IV

The judgment of the Court of Appeal denying the petition for writ of habeas corpus is reversed. The petition is granted. The judgment of the Los Angeles County Superior Court in People v. Willie Samuel Johnson, No. A043072, is vacated and petitioner is remanded to the superior court for further proceedings. The Clerk of the Court of Appeal is directed to remit a certified copy of this opinion to the superior court for filing, and respondent shall serve another copy thereof on the prosecuting attorney in conformity with Penal Code section 1382, subdivision (b). (See *In re Hall* (1981) 30 Cal.3d 408, 435, fn. 9 [179 Cal.Rptr. 223, 637 P.2d 690].)

Lucas, C. J., Panelli, J., Arabian, J., and George, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—I concur in the court's decision granting petitioner a writ of habeas corpus and reversing his conviction.

---

[10]Other courts have reached similar conclusions, holding that the Sixth Amendment guaranty of representation by counsel is not satisfied if the defendant's "counsel" has not been admitted to practice or has fraudulently obtained admission. (*Huckelbury* v. *State* (Fla.Dist.Ct.App. 1976) 337 So.2d 400 [had law degree and passed examination, but denied admission because academic record misrepresented]; *Harrison* v. *United States* (D.C. Cir. 1967) 387 F.2d 203 [128 App.D.C. 245] [representation by layman, Daniel Jackson Oliver Wendel Homes Morgan, impersonating a member of the bar]; *Baker* v. *State* (1912) 9 Okla. Crim. 62 [130 P. 820] [appointed counsel not admitted to practice or authorized to appear as attorney]; *People* v. *Cox* (1957) 12 Ill.2d 265 [146 N.E.2d 19] [never admitted to practice].)

As the majority holds, when an attorney on inactive status and with disciplinary charges pending submits his resignation from membership in the State Bar and then represents a defendant in a criminal case, the defendant is denied the right to counsel guaranteed by the California Constitution. (Cal. Const., art. I, § 15.)

The majority also concludes, however, that an attorney who has been suspended from legal practice based on conduct involving moral turpitude can provide the legal representation constitutionally guaranteed to criminal defendants. I disagree. When, as here, an attorney is suspended from the practice of law following an adjudication establishing the attorney's lack of good moral character, that person cannot provide the assistance of counsel that our state Constitution guarantees.

## I.

The relevant facts are as follows: In 1987, before he undertook to represent petitioner, Raymond Hane was charged with four felony counts of lewd and lascivious conduct with a child under the age of fourteen. (Pen. Code, § 288, subd. (a).) Included in the charges was the special allegation that Hane had befriended the child victim for the purpose of committing the alleged unlawful acts. (*Id.*, § 1203.066, subd. (a)(3).) On March 4, 1988, Hane pleaded guilty to one of the counts and admitted the special allegation.

On April 6, 1988, after receiving a certified copy of the record of Hane's conviction, we issued an order suspending him, effective May 6, 1988, from the practice of law pending our further order. (Bus. & Prof. Code, § 6102, subd. (a); *In re Naney* (1990) 51 Cal.3d 186, 195 [793 P.2d 54].)

This court's order suspending Hane from the practice of law also required him—within 30 days of May 6, 1988, the effective date of the order—to comply with rule 955 of the California Rules of Court by notifying clients and opposing counsel of his suspension and by filing with any court or other tribunal before which he had matters pending a copy of the notice he had sent to opposing counsel. (Cal. Rules of Court, rule 955(a)(1) & (4).)

In March 1989, almost a year after this court had suspended Hane's right to practice law because of his conviction of a felony involving moral turpitude, Hane agreed to represent petitioner on a felony charge of selling cocaine. (Health & Saf. Code, § 11352.) Thereafter, on May 8, 1989, Hane signed a form resigning from membership in the State Bar of California and specifying that his resignation was with disciplinary charges pending against him. On May 10, 1989, the Clerk of the State Bar Court filed Hane's

resignation. As of that date, Hane was on "inactive" status, which unequivocally prohibited him from practicing law in this state. (Bus. & Prof. Code, former § 6125.)[1] The terms of Hane's resignation required him to give notice of his inactive status to petitioner, opposing counsel and the court. Without doing so, on May 23, 1989, Hane appeared on petitioner's behalf at a pretrial conference in petitioner's felony case. On June 27, 1989, he represented petitioner in a one-day court trial, which resulted in petitioner's conviction.

Petitioner later learned that Hane's representation of him occurred while Hane was suspended from legal practice for a conviction of a felony involving moral turpitude and after Hane had submitted his resignation from State Bar membership. Petitioner then sought a writ of habeas corpus contending he had been denied the right to counsel.

## II.

In concluding that Hane's representation of petitioner violated the right to counsel guaranteed by the California Constitution, the majority relies solely on the fact that Hane had resigned his membership in the State Bar before he appeared as counsel at petitioner's felony trial. The majority attaches no constitutional significance to the fact that Hane was suspended from practicing law because of his conviction of a crime of moral turpitude.

Although it acknowledges that fitness to practice law requires good moral character as well as professional competence (maj. opn., *ante*, p. 699), the majority draws a distinction between unfitness demonstrated by a conviction of a crime of moral turpitude and "a legislative or judicial assessment of the attorney's professional competence" (*id.* at p. 697). According to the majority, an attorney who has been suspended from the practice of law because of bad moral character can provide the legal representation of a criminal defendant guaranteed by the state Constitution. I disagree.

A defendant in a criminal case is "entitled to be advised and represented at every critical stage of the case by counsel certified by the State to be competent *and of good moral standing*." (*Huckelbury* v. *State* (Fla.Dist.Ct.App. 1976) 337 So.2d 400, 402, italics added; accord *Solina* v. *U.S.* (2d Cir. 1983) 709 F.2d 160, 167; *U.S.* v. *Novak* (2d Cir. 1990) 903 F.2d 883, 887-889.) Thus, as other courts have recognized, the problem of representation by a person disqualified from the practice of law for moral turpitude is not simply one of professional competence.

---

[1]That section provided: "No person shall practice law in this State unless he is an *active* member of the State Bar." (Italics added.) A 1990 amendment modified the language but left the substance unchanged.

Like other states, California requires that a person establish "good moral character" before gaining admission to the State Bar. (Bus. & Prof. Code, § 6060, subd. (b).) There is "no vocation in life where moral character counts for so much." (*State* v. *Murrell* (Fla. 1954) 74 So.2d 221, 224.) A person who lacks good moral character is deemed unfit to practice law, and on that basis alone will be denied admission to the State Bar. (See *In re Lamb* (1989) 49 Cal.3d 239, 242 [260 Cal.Rptr. 856, 776 P.2d 765]; *In re Mostman* (1989) 47 Cal.3d 725, 736 [254 Cal.Rptr. 286, 765 P.2d 448].) Once granted, State Bar membership is conditioned on an attorney's continuing good moral character. (See generally, Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.3.)

An attorney's "ascertainable failure" to satisfy the licensing state's standard for good moral character is "a serious substantive flaw" in licensure, just as significant as the inability to meet the threshold requirements pertaining to legal knowledge. (*U.S.* v. *Novak, supra,* 903 F.2d 883, 888.) Such substantive flaws in licensure cannot be likened to mere " 'technical defect[s]' " such as failing to take the oath after satisfying all other requirements for admission. (*Ibid.,* and cases there cited.)

In California, a conviction of a serious sexual offense " 'repugnant to accepted moral standards,' " as involved here, is "on its face" proof of an attorney's moral turpitude. (*In re Duggan* (1976) 17 Cal.3d 416, 422 [130 Cal.Rptr. 715, 551 P.2d 19].) An attorney prohibited from practicing law as a result of moral turpitude, no matter how technically competent, lacks the essential moral qualification that California requires of its lawyers.

In this case, Hane represented petitioner in a felony trial while suspended from the practice of law following his felony conviction for sexually molesting a child whom he had befriended for the very purpose of committing lewd acts. Because Hane's suspension for a crime involving moral turpitude was "a serious substantive flaw" in his licensure (*U.S.* v. *Novak, supra,* 903 F.2d at p. 888), his representation deprived petitioner of the right to qualified counsel that article I, section 15 of our state Constitution guarantees.

The requirement that a lawyer have good moral character not only benefits individual clients, it also protects the courts. (See, e.g., *In re Scott* (1991) 52 Cal.3d 968, 978 [277 Cal.Rptr. 201, 802 P.2d 985]; *In re Calaway* (1977) 20 Cal.3d 165, 170 [141 Cal.Rptr. 805, 570 P.2d 1223].) An attorney is an officer of the court. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 2, p. 22.) This is a venerable concept, dating at least from 1275 A.D. (Gerber, Lawyers, Courts, and Professionalism (1989) p. 120.) As officers of the

court, lawyers have obligations to the system of justice that transcend their duties to a particular client.

Here, after his felony conviction for a crime involving moral turpitude and while suspended from the practice of law, Hane appeared as counsel for petitioner in a felony trial. In violation of rule 955 of the California Rules of Court, Hane fraudulently concealed his suspension from his client, opposing counsel, and the court. There can be no confidence in legal representation by such an individual, whose lack of veracity and trustworthiness impugns the very integrity of the judicial system.

## III.

The majority reverses petitioner's conviction because the person who purported to give him the "assistance of counsel" guaranteed by article I, section 15 of our state Constitution had previously submitted his resignation from membership in the State Bar. But the majority also concludes that an attorney who has been suspended from the practice of law on grounds of moral unfitness is still enough of an attorney to provide the legal assistance our Constitution guarantees. I cannot accept the latter conclusion. The right to counsel means the right to assistance by one whom the state has duly certified as both technically competent and morally fit. When this court suspends an attorney from the practice of law after receiving proof that the attorney has been convicted of a crime of moral turpitude, it withdraws the certification of good moral standing without which no individual can claim the status of "counsel" in our courts. In my view, petitioner's conviction must be set aside because his only legal representative was an individual who had lost his right to practice law on grounds of moral unfitness.

Mosk, J., concurred.